# M'Fadden *against* Hunt.

A bill in chancery, or an action of account render, is the only remedy by which one partner can recover the amount due to him by the firm; but there can be no recovery in any form of action in which one of the firm is both plaintiff and defendant.

ERROR to the Common Pleas of *Dauphin* county.
This case is fully stated in the opinion of the court.

*Rawn,* in support of the action, cited 1 *Binn.* 191; *Col. on Part.*

[M'Fadden v. Hunt.]

151; 1 *Vent.* 40; 1 *Wash. C. C.* 435; 6 *Serg. & Rawle* 333; 9 *Serg. & Rawle* 241; 1 *Halst.* 434; 3 *Pick.* 420; 15 *Mass.* 121; 6 *Pick.* 179; 4 *Watts & Serg.* 14; 2 *Term Rep.* 479; 2 *Whart.* 40.

*M'Cormick*, contra, cited Act of 13th October 1840, secs. 18, 19, giving chancery powers to settle partnership accounts: 17 *Johns.* 80; 14 *Johns.* 318; 1 *Wend.* 532; 1 *Hall* 180; 2 *Term Rep.* 179; *Gow on Part.* 74, 88; 1 *Story's Eq.* 15, 30; 7 *Watts* 300.

The opinion of the Court was delivered by

Kennedy, J.—This is an action of *assumpsit* by the plaintiff in error against Wm. B. & T. Hunt, John Dougherty, J. D. Davis and John M'Fadden, (the plaintiff himself), late partners, trading under the firm of the "Pittsburg and Philadelphia Reliance Transportation Company," to recover the sum of $14,265.52, a balance alleged by the plaintiff to be due to him, upon a settlement made with the company on the 23d of February 1839. The plaintiff, for the purpose of maintaining his action, gave in evidence a writing of the following purport: "We, the subscribers, late partners in the year 1836, trading under the name and firm of the Pittsburg and Philadelphia Reliance Transportation Company, having on the 12th of February 1839 assembled at Harrisburg for the purpose of making a final settlement of our business, and having examined all our books kept at the different shipping points, viz., Philadelphia, Columbia, Hollidaysburg, Johnstown and Pittsburg; and having settled all their books this 23d day of February 1839, do find them to stand as follows, viz.: The said Reliance Transportation Company owes to John M'Fadden $14,265.52. To meet this debt, the company possess the following resources, viz.:

Due by the Reliance Transportation Company of 1835, ............ $5056.47
"　John Bennet, judgment due 12th September 1839, .......... 1453.78
"　Wm. B. & T. Hunt, ................................... 1298.22
"　Charles O'Friel, book account, ..................... 174.38
"　O'Friel's draft on West Philadelphia Rail-road Company, of the 8th December 1836, at 6 months, now in the hands of H. M. Watts, Esq., Philadelphia, for collection, .......... 1300.00
"　J. M. Crisswell, ...................................... 135.00
"　boat John Hancock, supposed about ...................... 500.00
"　Thomas Young, of Johnstown, .......................... 14.00
"　Jennings & Craig, .................................... 226.16
"　James Entrekin, ...................................... 51.65

The last five named accounts have been placed in the hands of J. Dougherty for collection.

Amount of balance claimed by John Dougherty as due him per the book of John Dougherty, (in dispute), ....................................... $3091.53

Amount claimed as due to the company from John Dougherty, as per John M'Fadden's agent's account book, (in dispute), ............. 2674.50

It is agreed that the foregoing schedule of accounts due to and from the Reliance Transportation Company have been settled and finally disposed of, with the exception of the two entries on John

Dougherty's account, one of which is included in a charge on pages
73 and 75 of his account, December 14th 1836, for freighting goods
for the Reliance Transportation Company, in the year 1836, from
and to Columbia and Hollidaysburg; the other is embraced in a
credit claimed by him, entered on his day-book, page 196, in his
account of $3000, on account coal, which he claims as his indivi-
dual transaction. It is agreed by the parties that these two items
in this account, viz., the amount which may be found due him for
freighting goods in the year 1836, be the same greater or less than
therein stated, and the charge for coal as above stated, remain
open for future adjustment; John Dougherty claiming these
amounts, and the other parties objecting to the same. It is under-
stood these claims are in no way to have any bearing whatever
upon any other items in this settlement. Witness our hands, this
23d of February 1839.

John M'Fadden,          John Dougherty,
Wm. B. & T. Hunt,       John D. Davis,
  by Thomas Hunt.       by his att'y, James Davis.

Upon this statement, without more, the plaintiff rested his claim
and his right to recover in this action. If there had been assets
of the company on hand sufficient to have paid the $14,265.52 due
to the plaintiff from the company, and likewise to have paid the
sum of $3091.53 claimed by John Dougherty, another member of
the company, and the statement had shown that the assets were
of sufficient amount to have paid these two claims, it would have
been nothing but fair and just that the plaintiff should have been
paid; but the statement would rather seem to show the contrary,
that is, that there were no assets on hand at the time, out of which
any part of the plaintiff's claim could have been paid; that all
the resources of the company consisted of outstanding debts,
amounting only to $10,208.66, none of which appears to have been
susceptible of being collected immediately; yet they are stated to
be the resources which the company possessed to meet the debt
of the plaintiff against the company. Without a promise, either
express or implied, by the company to pay the plaintiff's claim, his
counsel admit that he cannot recover. It is not pretended that any
such express promise appears to have been made; and it appears
to me very plain that none can be implied from the statement, or
anything contained in it. It, on the contrary, seems to negative
every idea of the sort. The most that can be inferred from the
statement is, that the company were willing that the debts men-
tioned as owing to them should be applied, when collected, towards
the payment of the claim of the plaintiff; but certainly not that
they would themselves pay it, without regard to the collection of
these debts. It indeed would have been singularly strange, if they
had done so; for the plaintiff himself being one of the four persons
of whom the company was composed, was bound, in case the debts
could not be collected in whole or in part, to bear his proper pro-

[M'Fadden v. Hunt.]

portion of the loss, which would have tended necessarily to lessen his claim. Beside, these debts appear to have been all the property and funds to which the company had any right or claim; and if Dougherty established his claim of upwards of $3000 against the company, the funds, supposing them to be all made available, would fall short by $7000 and more of meeting the claims of the two partners. This $7000 being a loss arising out of the business of the partnership, would fall equally on the four partners, and the plaintiff's proportion of it have to be deducted from his claim; so that there is no ground whatever for implying such a promise as the counsel of the plaintiff contend for.

But this is not all; for although men may be foolish or unwise enough to promise almost anything, yet the law will not raise a promise by implication that it cannot enforce a performance of, or give redress for the injury which shall be sustained by reason of its being broken. The promise alleged to have been created by implication of law here, is, that the plaintiff and the other three members of the company promised to pay him, the plaintiff, the sum of $14,265.52, the amount due from the company to him as a partner thereof. I would ask now, how is redress to be obtained for the breach of such a promise? The counsel for the plaintiff seem to think that it is to be had by the plaintiff's bringing an action of *assumpsit* in his own name, as plaintiff, against *himself* and the other three partners or members of the company. It is clear, in such action, if he can recover at all, he must recover a judgment against all that he has made defendants; that is, against himself and the other three who were his co-partners, and united with him in making the promise as is-alleged; then, as the inevitable consequence of such a judgment would be that each or either of the four defendants would be bound and become liable for the payment of it, which would make the plaintiff liable, as a defendant, to pay it to himself as plaintiff; it is evident that such a thing would certainly be a legal anomaly, if not an absurdity. Even a co-executor cannot sue, in his own right, himself and his co-executors for a claim which he has against the estate of the testator; which would be much more reasonable and less incongruous, where he has no assets in his hands with which he can pay himself, and his co-executors have, than to permit the plaintiff to maintain the present suit. Suppose the plaintiff here were permitted to recover a judgment for the amount of his claim, it is perfectly manifest he would be receiving money which, from the statement, must be considered as lost for ever to the company, and of which loss he ought to bear his proper proportion. But farther: though it is not likely that after suing out execution on his judgment he would cause the whole or any part of it to be levied of his own property, yet he may cause the whole of it to be levied out of the property of one of the other three, who may be the only one of them that is able to pay anything. This would be the very height of injustice,

[M'Fadden v. Hunt.]

and ought never to be sanctioned or tolerated. The inevitable consequence would be, in such case, that the partner thus made to pay the whole amount of the judgment would have a right to bring his suit against the plaintiff, and recover at least one-half of it back. But if, in the meantime, the plaintiff should have become insolvent, and unable to pay anything back, the unfortunate partner who has been made to pay the amount of the judgment must bear the whole loss. This, of itself, is sufficient to show that the present action cannot and ought not to be maintained. And it shows further, where a partnership consists of three or more partners, and the carrying on of the business of it has been attended with a loss, as in the present case, that no action of *assumpsit* can be maintained by one of the partners against the others jointly, in order to compel and obtain contribution on account of such loss. If the partnership concerns have been settled between the partners, so as to ascertain the actual amount of the loss, as also the sums that may be coming from some of the partners to others of the company, in order to equalize the whole amount of the loss among them, and there be a promise made by each of those severally, who are behind, and ought to pay to the others respectively the sums necessary for the purpose of equalizing the whole loss, that they will pay the same, then, in case of failure to perform such promises, each promisee may maintain *assumpsit* against each promiser to him severally, and thus compel each one to bear his due proportion of the whole loss, and no more, according to his interest in the partnership. If, however, the partners cannot agree upon such amicable settlement and adjustment of the partnership concerns, and any one of them wishes to have it effected by legal means, he must either resort to a bill in chancery, or to an action of account render. But in neither of those modes of proceeding, for such purpose, can he make himself both plaintiff and defendant. The counsel, however, for the plaintiff, on the argument of this case, seemed to think that making the plaintiff a defendant also with the others of the company, was sanctioned by the Act of the 14th of April 1838, relating to the commencement of actions and other matters. Although the provision contained in that Act is somewhat anomalous in this character, yet it does not appear to extend to or embrace such a case as the present; that is, to authorize one partner of a firm, consisting of three or more persons, to institute and maintain a suit in his own name, as plaintiff, against himself and the other partners, to recover a claim which he has against the firm as a partner thereof. This, it is conceived, no Legislature, with a proper understanding on the subject, and foreseeing the necessary evil consequences that would arise from it, could ever be brought to give their consent to.

Judgment affirmed.